WILLIAM BEALEY, Appellant, v. BLAKE'S ADMINIS-
TRATOR, Respondent.

Kansas City Court of Appeals, April 5, 1897.

1. **Appellate Practice**: CONFLICTING EVIDENCE: INDORSED NOTE.
The fact that at the payee's death a stranger holds a note indorsed
in blank makes *prima facie* title in such stranger; but evidence show-
ing he held the note as the agent of the payee and contradicting such
stranger's possession is sufficient to prevent the appellate court from
interfering with the verdict.

2. **Administration**: DESCENT: RENTS: DEBTS. Rents accruing prior
to the ancestor's death vests in the administrator, but those accruing
after such death pass to the heirs unless the probate court orders the
administrator to rent the land to pay the debts of the estate.

3. ——: ——: ——: ——. An order by the probate court di-
recting the administrator to take possession of and rent the real estate
for the payment of debts can have no retrospective effect nor can it
authorize an administrator to recover from the heir rents collected by
him after the death but prior to the order.

4. **Appellate and Trial Practice**: DEMURRER: SUBSEQUENT IN-
STRUCTION: INVITED ERROR. A defendant whose demurrer to the evi-
dence has been overruled is not required to stand upon the demurrer
in order to maintain his exceptions to the action of the court in over-
ruling such demurrer, but can ask other instructions and go to the
jury upon the evidence and still object to the overruling of his de-
murrer in his motion for a new trial.

*Appeal from the Buchanan Circuit Court.*—HON. H. M.
RAMEY, Judge.

REVERSED AND REMANDED.

*Hall & Woodson* for appellant.

(1) The four notes for $125 each bore the in-
dorsement in blank of the payee therein, Norton Blake.
They were in the plaintiff's possession as owner, and
were claimed by him; the burden of proving otherwise

rested upon the defendant; and in the total absence of all evidence in that direction, the court should have instructed the jury to find as to that item of the set-off in favor of the plaintiff. (2) Title to the land was vested in the plaintiff by the deed from Gilbert Blake, made in pursuance of the directions of Norton Blake, and this deed was good as against the world until set aside in a proceeding had for that purpose. The deed was set aside in a suit by two of the children of Norton Blake, and the title was by the decree in that suit vested in the three children of Norton Blake, designated by name. The administrator of Norton Blake was not a party to that suit, was not bound by the judgment therein, and can base no claim or right thereon. Therefore, the administrator on the facts as they now exist has no right, title, or interest, whatever, in the land or the rents arising therefrom. (3) But if the administrator can, under the decree hereinbefore mentioned, assert the same right to the land that he could have asserted had the title thereto been in Norton Blake at the time of his death, then he is entitled only to the rents which accrued prior to the death of Norton Blake. He has no right to the rents which accrued after Norton Blake's death; they go with the land to the heirs. (4) The order by the probate court in relation to leasing the land was made after the trial in that court, and can avail nothing in this action. *Berry v. Shackelford*, 38 Mo. 392.

*James W. Boyd* for respondent.

(1) At the trial both parties to the suit asked the court to adopt the theory that the appellant was, if he collected said money, liable to respondent for both items of respondent's counterclaim, and hence appellant can not now be heard to complain. (2) Appellant

can not be heard to complain of instructions given in favor of respondent, if he adopted or ratified the theory therein ·contained by instructions asked by himself "submitting the opposite or converse of the facts hypothecated" in respondent's instruction. (3) Appellant's instructions 1 and 3 contain plaintiff's theory of the case. *Drennon v. Dalincourt*, 56 Mo. App. 128-132; *Bank v. Armstrong*, 92 Mo. 265-279; *Davis v. Brown*, 67 Mo. 313; *McGonigle v. Dougherty*, 71 Mo. 259-266; *Hilz v. R. R.*, 101 Mo. 36-41; *Johnson-Brinkman Co. v. Bank*, 116 Mo. 558-569; *Thorpe v. R. R.*, 89 Mo. 650; *Bettes v. Magoon*, 85 Mo. 580-586. (4) The theory adopted by the court and both parties is correct. But, if it were erroneous, appellant adopted it when he thought he could win by so doing, and now, having lost, can not be heard to complain. *Hardwick v. Cox*, 50 Mo. App. 509-514; *White v. Company*, 53 Mo. App. 337-341; *Herman v. Owen*, 42 Mo. App. 389-392; *Gates v. R'y*, 44 Mo. App. 488-495; *Reilly v. R. R.*, 94 Mo. 600-611; *Whitmore v. Supreme Lodge*, 100 Mo. 36-47. (5) Appellant can not complain of instructions ·in harmony with his own. If one instruction asked by appellant contains the respondent's theory or case, appellant can not be heard to complain. *Brieher v. Stone*, 47 Mo. App. 530-538; *Nelson v. Wallace*, 48 Mo. App. 193-199; *Johnson-Brinkman Co. v. Bank*, 116 Mo. 569; *Gates v. R. R.*, 44 Mo. App. 488-495. (6) The rents go with the land until the landowner dies. *Culver v. Page*, 55 Mo. App. 606-610. This rule has not been changed by our statute. (7) After the landowner's death the status of debts, owing to deceased, due then or to become due thereafter for the use of land leased by him or other consideration, is ascertained by the administration laws of Missouri—not the common law. The provisions of our administration law whereby the whole estate of a deceased person is subjected to the

payment of his debts, were designed to, and did supersede the common law and constitute a complete system within themselves. *Rozelle v. Harmon*, 29 Mo. App. 569–585; R. S. 1889, secs. 69, 92, 129, 145, 146; *Lewis v. Carson*, 16 Mo. App. 342; s. c., 93 Mo. 587; *McPike v. McPike*, 111 Mo. 216–227; *Gamble v. Gibson*, 59 Mo. 585–594; *Eoff v. Thompson*, 66 Mo. 225, 226. (8) The debts for rent as provided for in said lease accrued in Norton Blake's lifetime. He was or became the owner of these demands. A claim or demand accrues when the liability is incurred. *Kennedy v. Burrier*, 36 Mo. 129.

GILL, J.—This suit originated in the probate court of Buchanan county, where plaintiff Bealey asked the allowance of an alleged balance due on a note executed by the deceased Blake during his life. No question was made as to the validity of the note, but a controversy exists as to certain counterclaims interposed by the defendant administrator. These cross demands consist of, *first*, that Bealey owed the defendant as administrator of the Blake estate the amount of about $1,700 collected by Bealey on certain notes, which at the time of Blake's death were in the custody of Bealey, but which notes in fact belonged to Blake. And, *second*, the administrator set up in his answer that Bealey owed him as Blake's administrator a further large sum because of rents collected on certain lands in Buchanan county which the deceased Blake owned at the time of and prior to his death.

STATEMENT.

At the trial in the circuit court the jury not only found sufficient in defendant's favor to satisfy the amount due on the note plaintiff had presented for allowance but awarded to the defendant the further sum of $1,701.90, and from a judgment in accordance therewith plaintiff appealed.

As to the counterclaim on account of the four notes which the plaintiff is charged with having collected and applied to his own use, we may dismiss that with the remark that the evidence as to the ownership of these notes was conflicting and the verdict of the jury will not therefore on that account be disturbed. It is true that these notes were at Blake's death in the hands of the plaintiff and had indorsed thereon in blank the name of the payee. This of course tended to prove ownership in the plaintiff. Yet there was substantial evidence tending to overthrow this *prima facie* title and to establish defendant's theory, to wit: That the plaintiff merely had these notes in his possession and control as the trusted agent of Mr. Blake, the payee. When Blake died in March, 1891, these notes were according to the facts found by the jury among the personal assets of the deceased and as such passed to his administrator. Plaintiff subsequently collected the notes and the money arising therefrom belonged to the defendant in his capacity of administrator.

APPELLATE practice: conflicting evidence: indorsed note.

The charge that plaintiff has rents, collected from tenants occupying lands which belonged to the defendant's intestate, arises out of the following facts: In April, 1890, the deceased, Norton Blake, conveyed the land by warranty deed to one Gilbert Blake, a nephew, who made a mere nominal payment thereon and gave several notes covering the pretended purchase money. A short time thereafter, in July of the same year, Gilbert Blake leased the land to one Overton for a period ending March 1, 1894, the latter agreeing to pay $300 for rent to March 1, 1891, and $800 in quarterly installments for each year thereafter. Within three months after making this lease to Overton, October 4, 1890, said Gilbert Blake and Norton Blake made a pretended

ADMINISTRATION: descent: rents: debts.

rescission of said land sale, but instead of reconveying
the land to Norton Blake said Gilbert at the request of
the former deeded the same to plaintiff Bealey and at
the same time assigned over to Bealey the Overton
lease. Norton Blake died in March, 1891, and defend-
ant qualified as his administrator. Some time within
the next few years (the exact date does not appear) the
heirs of said Norton Blake (with the exception of
Bealey's wife, who was also an heir, and who was
made a defendant) brought a suit to set aside the above
named conveyance to Bealey, and as a ground therefor
charged that the transaction including the conveyances
of Norton Blake to Gilbert Blake, and from the latter
to Bealey, was a fraudulent scheme to cheat and de-
fraud Norton Blake out of his land; that said Norton
Blake was then demented and insane and entirely under
the control of said Bealey, etc. This case was tried
in June, 1895, when the plaintiffs established the
allegations of their petition and a decree was entered
canceling the deeds above mentioned and decreeing
title in the heirs of said Norton Blake. In the mean-
time, however, Overton had occupied the land under
his lease and paid the rent to the plaintiff. It is this
rent now collected by plaintiff after Norton Blake's
death that is claimed by the latter's administrator, and
which he seeks to recover from the plaintiff by means
of the counterclaim before mentioned. Plaintiff's con-
tention is that these rents accruing after the death of
the real lessor vested in the heirs and not in the defend-
ant administrator.

The trial court seems to have adopted the defend-
ant's theory. In our opinion this was error. The
principle is as old as the common law itself that the
real estate descends to the heirs; that the administra-
tor has no title to or control over it except as given by
statute for particular purposes. As said by Judge

LEONARD in *Aubuchon v. Lory*, 23 Mo. 99: "The real estate of a deceased person descends upon his death to his heirs or passes to his devisees under his will. By the common law the personal representative whether executor or administrator takes no interest in it and our statute gives him nothing but the naked power to sell for the payment of debts or to make short leases under the direction of the county court. The right to the possession therefore belongs to the heirs or devisees and they only are the proper parties to sue for any injury to it." Rent is a certain profit issuing out of land and tenements and as such it abides, unless otherwise provided, with the title. It is incident to the reversion and follows a transfer of ownership whether such transfer be by voluntary or involuntary conveyance, by devise, descent, or otherwise. The rent due and payable before the death of the lessor is personal property, a chattel, and passes to the administrator; but "no rule of the common law is better settled than that the unaccrued payment of rents on land after the death of the owner or lessor goes to the heir and not to the administrator. As the realty descends directly to the heir the accruing rents as the fruit of the inheritance must follow the principal estate." *Shouse v. Krusor*, 24 Mo. App. 279, and cases cited.

The foregoing with other numerous authorities cited in plaintiff's brief conclusively settle that the rents accruing for the use of Norton Blake's land, prior to his death, vested in his administrator, but that such rents and profits accruing *after* the owner's death passed to the *heirs* and not to the administrator. The statute has, it is true, provided that the land of the deceased as well as the rents may, if necessary, be subjected to the payment of debts but until this is ordered on a proper hearing before the probate court the lands and possession thereof as well as the rents arising from,

the use of such possession pass to and remain with the heirs and for their exclusive use and enjoyment. These rents accruing after death of the owner or lessor are not the "debts" which the statute requires the administrator to inventory, take possession of, and collect.

The record shows that some time after this suit was brought, to wit, October 5, 1896, the probate court on his application ordered the defendant administrator to take possession of the lands of said Norton Blake and lease the same, it being declared necessary so to do for the payment of debts. This order was made by virtue of section 129 of our administration law which provides that "no administrator or executor except an executor acting under power conferred by will, etc., etc. * * * shall rent or control the real estate of the deceased unless the probate court having jurisdiction shall be satisfied that it is necessary to rent said estate for the payment of debts and make an order of record requiring such administrator or executor to take possession of and rent the same for a period not exceeding two years." But this order does not justify a claim by the administrator for the rents already accrued or collected. It could have no retrospective effect; it was clearly only intended to authorize the administrator then to take possession and utilize the future rents for the payment of debts. The statute never contemplated that the administrator might lie by, permit the heirs to control the real property and collect the rents in the meantime and then force the heirs to yield up the rent the property had earned before the administrator, under the orders of the probate court, entered into possession. We think it clear that the statute intended to authorize the administrator to take rents accruing after and not before the order of the probate court.

Bealey v. Blake's Adm'r.

In our opinion then the court should have given the plaintiff's instruction in the nature of a demurrer to the evidence offered to sustain the counterclaim for rents accruing on the lands after Norton Blake's death. But defendant's counsel insists that because plaintiff after being overruled by the court on this theory submitted instructions based on the legality of said counterclaim for rents, he is now denied the benefit of exception to the court's ruling against him. In other words, if error was committed in submitting to the jury the counterclaim for rents it is one common to both parties and plaintiff can not now complain. This position is untenable. This would be carrying the operation of the rule invoked beyond all reasonable limits. Plaintiff's counsel well contends that a defendant whose demurrer to the evidence has been overruled is not required to stand upon the demurrer in order to maintain his exceptions to the action of the court in overruling the demurrer. He can ask other instructions and he can go to the jury upon the sufficiency of the evidence and he can still object in his motion for a new trial, and afterward in the appellate court, that his demurrer should have been sustained. For a ruling in point, see *R. R. v. Meyers*, 76 Fed. Rep. 443.

It results then that the judgment of the circuit court must be reversed and cause remanded. All concur.

*Marginalia: APPELLATE and trial practice: demurrer: subsequent instruction: invited error.*