## OWNBY EVERHART, Appellant, v. HENRY BRYSON.

### In Banc, July 2, 1912.

1. **INSTRUCTION: Peremptory: Order of Request.** It is immaterial in what order the peremptory instruction to find for plaintiff was asked, whether before or after the instructions on the merits. In either case, in determining whether or not it was inconsistent with the instructions on the merits asked and given, and whether or not error in refusing that instruction was waived by a request for. the others, it will be assumed that the peremptory instruction refused was first offered.

2. ———: ———: **Waived by Request for Inconsistent Instructions: Slander.** A plaintiff cannot on appeal object to the refusal of the trial court to give a peremptory instruction to the jury to find for him, if he also asked and was given other instructions inconsistent therewith. And instructions telling

Everhart v. Bryson.

the jury, that if they find certain facts to be true they must find for plaintiff, are inconsistent with said peremptory instruction, and having been asked and given, the plaintiff thereby waived his right to assign the refusal of the peremptory instruction as error. The rule applicable to plaintiff and defendant in this regard is radically different. [Disapproving Bealey v. Blake's Admr., 70 Mo. App. 229, and Eagan v. Martin, 81 Mo. App. 676.]

Held, by KENNISH, J., dissenting, with whom WOODSON, J., concurs, that since defendant by his answer admits having publicly uttered the words imputing to plaintiff the felony of forgery and does not plead justification, plaintiff was entitled to recover without regard to the testimony, and did not waive his right to a peremptory instruction by making the best of the situation in which he was placed by the error of the court, by asking an instruction basing his right to recover on the truthfulness of the testimony and the allegations of his petition. Held, also, that the same rule in such case should be applied to plaintiff and defendant, as it has always been applied to defendant, namely, that, when the court errs by a refusal to give to plaintiff an instruction to which he is clearly entitled, he does not waive his right to assign that ruling as error, by asking other instructions inconsistent with that one, and submitting himself to the erroneous theory of the court and making the best of the only situation left to him.

3. **SLANDER: Understanding of Hearer.** The plaintiff does not have an unqualified right in all slander cases to take the hearer's understanding of the meaning of the words spoken. Such evidence is competent only when the words are ambiguous, and when there are attendant circumstances which cannot fairly be placed before the jury. Where the words used were, "Everhart and a negro, Snell, a negro man, ran off together once on money obtained by a forged check," there is no ambiguity in their application, for they have no double meaning, and the court did not err in refusing to permit a hearer to testify what he understood the words to mean.

4. ————: **Instruction: Converse of Plaintiff's.** Plaintiff cannot complain of an instruction given for defendant which is the converse of those asked and given for himself, and presenting the same theory. And the instruction set out in the opinion in this slander case is *held* to be of that character.

Appeal from Audrain Circuit Court.—*Hon. J. D. Barnett,* Judge.

AFFIRMED.

*E. A. Shannon* and *Barclay, Fauntleroy & Cullen* for appellant.

(1) The court erred in refusing to give the jury the peremptory instruction asked by plaintiff. The answer admits the slander and does not plead the truth, and defendant admits the slander. In these circumstances the only question open is the amount of damages. Mitchell v. Bradstreet, 116 Mo. 226. (2) The court erred in sustaining the objection to the question asked of witness Pool, what he understood by the words spoken of plaintiff by defendant. The hearer's understanding of the alleged slander is competent. Julian v. Star, 209 Mo. 35. And although the court was not unanimous as to the rule in a libel case, yet there is no dissent from this doctrine in a slander suit. Julian v. Star, 209 Mo. 113. And in these cases hearers have been permitted to testify to their understanding of the alleged slander. Lewis v. Humphries, 64 Mo. App. 466; State v. Bonine, 85 Mo. App. 466; Barton v. Holmes, 16 Iowa, 252; Binford v. Young, 115 Ind. 174; Proctor v. Pointer, 127 Ga. 134. That Pool's understanding was competent is also supported by the following authorities: Wagner v. Printing Co., 45 Mo. App. 6; Ball v. Pub. Co., 237 Ill. 592; Knapp v. Fuller, 55 Vt. 311. (3) The court erred in giving defendant's instruction 3. An intent not to vilify is no excuse for slander. Morris v. Sailer, 134 S. W. 98. (4) The court erred in excluding defendant's first answer. An abandoned pleading is competent as an admission. Lynch v. Railroad, 208 Mo. 1.

*Robertson & Robertson* for respondent.

(1) The language charged in the petition is not actionable *per se*. Newell on Slander & Libel (2 Ed.),

84; Christal v. Craig, 80 Mo. 372; Curry v. Collins, 37 Mo. 328; Carpenter v. Hamilton, 185 Mo. 615; Powell v. Crawford, 107 Mo. 595. The language charged in the petition is: "Everhart (meaning the plaintiff) and the negro Snell (meaning one James Snell), a negro man, ran off together once on money obtained by a forged check." Under the foregoing authorities it is quite clear that the language charged is not actionable *per se,* and it was necessary for the plaintiff in the petition, and so he recognized by the use of the innuendo, to apply these words to the plaintiff and to attempt to extend their meaning. The other charge of the petition was abandoned. The language set forth in the petition does not charge the offense of forgery, and on the face of it, it is as applicable to the negro as it was to the plaintiff. So then, it was a question for the jury to say whether or not the plaintiff had been slandered by the defendant. This question was properly submitted to the jury by the plaintiff's instructions and by the defendant's counter instructions. (2) The proof on the part of the plaintiff was uncertain as to the language used. The plaintiff depended solely upon the witness Pool to prove the language charged in the petition, and he could only give his best impression as to it. The plaintiff then used the deposition of the defendant theretofore taken to attempt to prove the language used, and that varied from the language charged; and, therefore, plaintiff failed in his proof of his allegations. At most it was a question for the jury to say whether or not the language charged was proven. This the plaintiff recognized in asking his instructions and in the first instruction based his right of recovery upon the language as charged. The language used by the defendant was not that the plaintiff ran off on money obtained by a forged check, but as submitted to the jury in the defendant's deposition it was that defendant had heard or understood that

such was the case. The language used by the defend-
ant was not substantially the same as that charged.
The jury had the right to determine that the defendant
used the language which he admitted in the deposition,
and that was neither in the same phraseology nor sub-
stantially the same as charged in the petition, and un-
der plaintiff's own instruction the jury had a right to
return a verdict in favor of the defendant for failure to
establish what the plaintiff had alleged. Christal v.
Craig, 80 Mo. 374; Berry v. Dryden, 7 Mo. 324; Birch
v. Benton, 26 Mo. 161. (3) There was no error in the
court's refusal to allow the witness Pool to testify as
to what he understood the defendant meant by the lan-
guage used. The witness himself had already answered
that question by saying that the language was in plain
English, and there was no effort on the part of the
plaintiff to show that the witness understood the lan-
guage otherwise than as expressed by the defendant.
Before the plaintiff was entitled to insist upon the
overruling of the objection it must appear that the
witness would have given some different answer from
that which he had already given and that he understood
the words in a different sense than their ordinary im-
port. Before the plaintiff can be entitled to make com-
plaint as to the sustaining of that objection it must
appear that the plaintiff had some testimony excluded
by reason of the objection. It was the duty of the
plaintiff to state what he proposed to prove so that
the court could judge of its materiality and relevancy.
So far as appears from what took place at the time the
witness had already answered the question and had
no different answer of anything that was material.
Hickman v. Green, 123 Mo. 179; Bank v. Aull, 80 Mo.
109; Jackson v. Hardin, 83 Mo. 175; State ex rel. v.
Leland, 82 Mo. 260; Kraxberger v. Roiter, 91 Mo. 404;
Berthold v. O'Hara, 121 Mo. 88. Where the meaning
of the words used is plain and when used according to

their natural and ordinary significance, the testimony of witnesses as to their understanding of the meaning of such words is not admissible. Branch v. Knapp & Co., 222 Mo. 597; Callahan v. Ingram, 122 Mo. 375. (4) The appellant is in error in his first point in stating that the answer admits the slander. The first part of the answer is a general denial and therefore denies the alleged slander. Neither in the subsequent part of it does it admit the speaking of the words charged, but further alleges that what defendant did say was simply in the relation of a circumstance not slanderous nor intended as such. The error of appellant's argument consists in assuming that the words charged in the petition are slanderous *per se*. It was a question for the jury as to whether or not the language used was slanderous, and that was properly submitted to the jury by instructions given at the request of both parties. Johnson v. Post-Dispatch, 65 Mo. 539. It is immaterial that the defendant used the words that he had understood or had heard the facts of the circumstance which he related and did not give the name of his author. The statement not being slanderous *per se,* removes it from the rule of the requirement to give the name of the author. Dole v. Lyon, 10 Johnson's Rep. 449. Before plaintiff can be entitled to recover in an action for slander in any case he must allege and prove that the words were actually used in an actionable sense and were applied to the plaintiff. Lewis v. Humphries, 64 Mo. App. 471; Julian v. Star, 209 Mo. 79; Israel v. Israel, 109 Mo. App. 366; Bridgman v. Armer, 57 Mo. App. 528; Newell on Slander & Libel (2 Ed.), 649.

FERRISS, J.—Action for slander upon the following petition:

"Plaintiff for his cause of action states that the defendant, on or about the 26th day of March, 1907,

at the city of Centralia, in the State of Missouri, wil-
fully, wantonly and maliciously spoke of and concern-
ing the plaintiff certain false, defamatory and slander-
ous words, to-wit:    'Everhart (meaning the plaintiff)
and a negro, Snell (meaning one James Snell), a negro
man, ran off together once on money obtained by a
forged check.'    And said words were spoken in the
hearing and presence of third parties; and by said
words the said defendant did charge and intend to
charge that the said Ownby Everhart had made and
uttered a forged check upon some duly incorporated
bank, and had obtained money upon said forged check,
and the said words were so understood by the persons
who heard them.    Whereby plaintiff has been greatly
injured in his good name and fame, to his damage in
the sum of ten thousand dollars, five thousand dollars
of which he says is actual damage, and five thousand
dollars as punitive damages, for which sum of ten thou-
sand dollars he prays judgment, and costs.''

The answer is a general denial, and then this in
mitigation:

''Defendant, further answering, says that what-
ever words he may have spoken of and concerning the
plaintiff were spoken without any ill will or malice to-
ward him, and were not spoken with the intent to in-
jure him, but at the time they were spoken, the said
defendant did not speak of and concerning the plain-
tiff as to his own knowledge, and so stated at the time,
but defendant did say of and concerning the plaintiff
that he, the defendant, had understood that the plain-
tiff had forged his, plaintiff's father's name, to a check,
and in that way got some money by which he and the
negro man, James Snell, had gone off together, but
this defendant in relating said circumstance, in speak-
ing of and concerning the plaintiff and his connection
with the said check and the said James Snell, the negro

man, stated what was current rumor in the vicinity in which plaintiff and 'defendant lived, and defendant stated at the time of using said words, that the information had come to him from others, and did not undertake to state the same to be a fact, and it was understood by the persons who heard the said speaking that said defendant made said statement not upon his own knowledge but upon the information of others.

"Defendant further denies that the language used by him of and concerning the plaintiff is slanderous, or that it amounted to the imputation of a crime by said defendant against plaintiff."

The case was tried before a jury, the verdict being for the defendant. Plaintiff appeals.

There was evidence tending to sustain the allegations of both the petition and answer.

The plaintiff complains: (1) Of the refusal of his peremptory instruction to find in his favor; (2) of adverse ruling on evidence offered to show the sense in which hearers understood the language used; (3) of instruction numbered 3 given for defendant. The other points are unworthy of consideration. Further facts necessary to an understanding of the opinion will be found therein.

I. At the close of the evidence plaintiff asked and the court gave, among others, instructions numbered 1 and 2, as follows:

"1. If you believe from the evidence that the defendant spoke of and concerning the plaintiff, in the presence and hearing of J. Kelly Pool, the words mentioned in the petition, to-wit: 'Everhart and a negro, Snell, ran off together once on money obtained by a forged check,' and if you further believe that by said words the defendant did charge and intend to charge that said Ownby Everhart had made and uttered a forged check, and had obtained money upon such

forged check, and the said words were so understood by the persons who heard them, then you are instructed that it is your duty to return a verdict for the plaintiff.

"2. The court instructs the jury that in this case there is no justification pleaded, and the defendant does not allege that the words he spoke of and concerning plaintiff were true, and if you find and believe the defendant spoke of and concerning plaintiff the words set forth in plaintiff's instructions numbered one and two, and thereby charged and intended to charge that Ownby Everhart had made and uttered a forged check, and the words were so understood by the person who heard them, then the verdict must be for the plaintiff."

Plaintiff also requested the court to give this instruction:

"The court instructs the jury that under the law and the evidence in this case you should return a verdict for the plaintiff, and the only matter for your consideration is the amount of damages."

This instruction was refused, and plaintiff excepted.

The way to the consideration of plaintiff's objection to the court's ruling on this instruction is blocked by an important question of appellate procedure, namely: Can plaintiff object on appeal to the refusal of this instruction, in view of the fact that the above instructions numbered 1 and 2, were given at his request? The case was pleaded, tried and instructed on both sides upon the theory indicated in the above given instructions. The peremptory instruction refused was inconsistent with numbers 1 and 2, given for plaintiff. Defendant contends that plaintiff waived his objection to the refusal of his peremptory instruction by asking and receiving the instructions which submitted the question of slander or no slander to the jury, and calls attention to the abstract, which fails to

show that the peremptory instruction was asked first, but, on the contrary, would seem to indicate that it was an afterthought. We do not regard the order in which instructions are offered as important, and will assume that the peremptory instruction was first offered, and refused. [Kenefick-Hammond Co. v. Fire Ins. Society, 205 Mo. l. c. 313.]

It is undoubtedly established law that an appellant cannot complain of an error which he invited. It is also true that if it was error to refuse the peremptory instruction, it was error to give the inconsistent one submitting the question to the jury; but the latter having been given at appellant's request, he invited the error if error was committed. It is settled by numerous decisions of this court that a *defendant* does not waive his objection to the refusal of the court to give his peremptory instruction in the nature of a demurrer to the evidence by asking further instructions to meet those given on behalf of the plaintiff. Should the same rule apply to the plaintiff regarding his peremptory instruction? It may be remarked in passing that this privilege extended to the defendant is not recognized in all jurisdictions. It is in the nature of an exception to the general doctrine of waiver and estoppel. Its recognition in this State is put upon the ground that the defendant does not come into court voluntarily, and cannot retreat therefrom. He is therefore allowed to shift his ground, if need be, to meet the attack of his adversary, which attack he can in no way control. On the other hand, the plaintiff is the moving party. He selects his method of attack. If one theory put forward by him, by his instructions, is denied by the court, he may retreat from the contest with his rights in full force for a new attempt. Not so the defendant. If, under these conditions, the plaintiff (his first theory being denied by the court) sees fit to persist and try the case on a different theory, approved by the court,

he must be held to have waived his objection to the ruling of the court on his first proposition.

That such distinction between the plaintiff and defendant exists is clearly indicated in Cochran v. Railroad, 113 Mo. l. c. 366, where GANTT, J., says: "It must be remembered that a defendant occupies a different attitude from his adversary, the plaintiff. The plaintiff brings the action. If the ruling is adverse, he may take a nonsuit. Not so with the defendant. He is in court without his consent. The court may make any number of rulings that he may deem erroneous, but he cannot abandon the case; he is in court, and must remain until the cause is finished. He has a right to tender as many defenses as he has. If the court erroneously deny him one, he must avail himself as best he can of those remaining. He, however, advises the court and his adversary of his claim, and if he submits, as he is bound to do, to the ruling of the court, and tries his case in accordance with the judgment of the trial court, on what principle is he estopped from complaining of the action of the trial court and his adversary in forcing him to fight the battle upon ground selected by them and at a great disadvantage to him? We see no element of estoppel in such a case."

And again, by LAMM, J., in Kenefick-Hammond Co. v. Fire Ins. Society, 205 Mo. l. c. 307, where he says: "In construing rules of appellate practice in accordance with right reason regard must be had to the difference between the position occupied by a defendant and that occupied by a plaintiff. The plaintiff goes into court voluntarily; the defendant is 'lugged' in, that is, pulled in by the lugs, will ye, nill ye. The plaintiff goes up to battle on his own ground—he pitches the field."

These expressions must mean that the defendant is allowed, by grace, to do something which the plain-

tiff cannot be allowed to do. They have no force unless they deny to plaintiff the right accorded to the defendant. We think this distinction is radical. The plaintiff, by his instruction asked and given, after his peremptory instruction is refused, plants his case upon the theory of the given instruction. This latter instruction determines the theory of the case, and, having asked it, he must stand by it. The defendant, on the other hand, affirms his instructions, asked after his peremptory instruction is refused, to be right only for the purpose of meeting the theory advanced in those given for plaintiff. For that purpose, and to that extent only, is he bound by them. For this reason he is held not to have waived his peremptory instruction. But the plaintiff has the initiative. At his request instructions are given by the court upon a certain theory. He invites the defendant, indeed forces him, to meet this theory, and trys out the case so made before the jury. If defeated on this battlefield which he "pitches," he cannot be heard in the appellate court to say that the case was instructed upon the wrong theory, and that his first theory, rejected by the court, was the only true one. This particular point is before this court for the first time; nor can we find, though we have diligently searched, a discussion of it by text-writers or by the courts of other States. Two cases in the Kansas City Court of Appeals—Bealey v. Blake's Admr., 70 Mo. App. 229, and Eagan v. Martin, 81 Mo. App. 676—appear to hold contrary to the views above expressed, the Eagan case following the decision in the former case. The ruling in the Bealey case rests upon an assumed analogy between the positions of the plaintiff and defendant in this regard, and extends to the former the benefit of the rule established as to the latter, namely, that he does not waive his peremptory instruction by asking others to meet plaintiff's case. The only authority cited is upon that proposition. As

these decisions of the Court of Appeals upon this point are not in harmony with the views herein expressed, they must be disapproved.

II. When Mr. Pool, in whose hearing the alleged slander was uttered, was upon the witness stand, the following occurred:

"Q. Mr. Pool, Mr. Robinson asked you if you understood what he meant by that language, and you said it was plain English. What did you understand he meant by that? A. I understood he meant—

"Mr. Robertson: I object to that.

"The Court: The objection is sustained.

"To which ruling of the court plaintiff then and there excepted and saved his exception."

Plaintiff insists that he had a right to ask the hearer his understanding of the words spoken by defendant, and appeals for authority to the views expressed by this court in Julian v. Star, 209 Mo. 35; referring to the majority opinion, at pages 75-82, and to pages 113-128 of the dissenting opinion, both opinions conceding this right in certain cases of slander. That case, however, does not concede an unqualified right in all slander cases to take the opinion of a hearer as to the meaning of the words spoken. On the contrary, the evidence is held to be competent only when the words used are ambiguous, and when there are attendant circumstances which cannot be fairly placed before the jury. In the dissenting opinion in that case (p. 113), GRAVES, J., says:

"To our minds there is and should be a clearly marked line of distinction between libel and slander cases in this regard. We can see reason for the rule in the case of slander or spoken words. Accompanying accent, intonation, facial expression, tone, manner, gesture, etc., are seen and heard by the witness. These things are difficult of description before a jury, so

that it is practically impossible to place the jury in the place of the hearer. *Ex necessitate,* the understanding of the hearer becomes essential in the administration of justice, and his bald conclusion of the meaning of the language used is admitted.'' But further, on page 115: ''But this rule should not apply to slander cases, where the words are unambiguous, and not accompanied by the things aforesaid 'which are difficult to describe or reproduce before the jury, nor to libel cases.''

On the same point, we find this in Starkie on Slander & Libel (5 Ed.), p. 466: ''Where the words spoken or the meaning of the terms employed are ambiguous, and it is doubtful in what sense the speaker intended them, the question is in what sense the *hearers* understood them; and if, when words may have two meanings, the hearers understood them in an actionable sense, the action is maintainable; for the slander and damage consist in the apprehension of the hearers.''

We said in the Julian case of this statement last quoted: ''The author there is speaking of words that may have two meanings, one actionable, the other not so.''

The words alleged to have been spoken in the case at bar are: ''Everhart (meaning the plaintiff) and a negro, Snell (meaning one James Snell), a negro man, ran off together once on money obtained by a forged check.''

These words, in themselves, have no double meaning. Each word is plain English. The ambiguity lies in their application. Did the implication that a forgery had been committed apply to plaintiff, or to the negro, or to either or both? This was a question for the jury to settle in the light of all the evidence, and its solution did not depend upon any facts or circumstances which were known to the hearer and could not

be known to the jury. There were no extraneous circumstances calling for an expert opinion. The objection was, therefore, properly sustained.

III. Plaintiff complains also of instruction numbered 3 given for the defendant. Here it is:

"The court instructs the jury that it is for you to determine whether the defendant meant by the use of said language to charge the plaintiff with the crime of forgery, and if you find that said language was used by defendant without malice and in good faith, in relating what he had heard of the plaintiff, not intending thereby to injure the plaintiff or charge him with being guilty of the crime of forgery, and further find that said words were not understood by the persons who heard them as charging that Ownby Everhart made or had uttered a forged check, then said language so used does not constitute slander, and you will return a verdict for the defendant. Or, if the defendant said that he understood or heard that the plaintiff and a negro man named Snell ran off together once on money obtained by a forged check, and if you believe from the language used under the circumstances defendant did not charge the plaintiff with the offense of forgery, and if none of the hearers understood it as charging plaintiff with the crime of forgery, then the defendant is not liable, and you will so find."

This instruction is the converse of instructions 1 and 2, given for plaintiff, and presents the same theory. Plaintiff is therefore in no position to object that it is improper. [Huss v. Bakery Co., 210 Mo. 44.]

Finding no reversible error, the judgment is affirmed.

All concur except *Woodson* and *Kennish, JJ.,* who dissent.

## DISSENTING OPINION.

KENNISH, J.—I cannot concur in the foregoing opinion. Under the law of libel the jury are the judges both of the law and the fact. That rule does not apply to slander, but instead the general rule of jury trials that questions of law are for the court and questions of fact for the jury. In this case the defendant admitted in his answer that he publicly uttered the language complained of, imputing to the plaintiff the felony of forgery. He did not plead the truth of the crime thus imputed and therefore as a question of law it necessarily followed that the language was false, malicious, slanderous *per se,* and that the plaintiff was entitled to recover, without regard to the testimony.

At the close of the evidence the plaintiff asked an instruction directing a verdict in his favor. The court erroneously refused it. The plaintiff then, to make the best of the situation in which he was placed by the error of the court, asked two instructions submitting his right to recover as a question of fact to be determined by the jury. These instructions were given and this court now holds that by asking them he forfeited his right to have the court's said erroneous ruling reviewed, and also forfeited his right to redress, notwithstanding the fact that such right appears in the record proper in this court. To reach that result a new rule of procedure is evolved which admittedly is without precedent and is adopted at the cost of overruling two decisions of our appellate courts. Under this rule it is conceded that a *defendant* by unsuccessfully asking an instruction directing a verdict in his favor does not waive his right to have such adverse action of the court reviewed on appeal, by subsequently asking instructions, as the plaintiff did in this case. The reason given for the rule thus discriminating between litigants is that the defendant is "lugged"

into court, while the plaintiff comes in of his own accord. If a plaintiff, in order to vindicate his name against a false charge of felony, is compelled to seek redress in the courts, is he to be handicapped by reason of that fact, and is the defendant who confesses the slander to be given the benefit of a rule denied the plaintiff, because the latter found it necessary to go into court voluntarily, while the former was brought in by process? If that is not putting a premium on wrongdoing and penalizing an injured party, it would be difficult to conceive of such a case.

The bald fact stands out in this record that although the defendant confessed the actionable slander complained of, he has prevailed because of an error of the trial court in his favor and because of a new rule of procedure not founded upon authority and without substantial basis in the principles of justice.

*Woodson, J.,* concurs in this opinion.