BLAIR HORSE & MULE COMPANY, Appellant, v. JAMES A. HATFIELD, Respondent

Kansas City Court of Appeals, December 1, 1913.

1. **CONTRACTS: Violation of Statute.** The owner of a system of public barns, which had become infected with an infectious animal disease, agreed with defendant that if the latter would transact his business through said barns, the former would hold him harmless from loss sustained by reason of disease contracted thereby. Defendant handled his mule business through said barns and was furnished money to purchase such animals. Eight mules were later found to have contracted the disease which was incurable, and the mules were worthless. At this time defendant owed the barn owner a balance due on the account. It was agreed between them that the account should be deemed square and the eight mules turned over to the barn owner. This was pursuant to the agreement to save defendant harmless from loss on account of disease. Defendant went to get the mules to deliver them to the barns the next day but, on a telephone from the barn not to bring the mules there as it would be a violation of law, he did not, and the mules were killed by the State authorities. Later the barn owner brought suit to recover the balance due on the account. Defendant pleaded the agreement and the settlement. *Held*, that the settlement was not a trade or sale of the mules within the purview of Sec. 4863, R. S. Mo. 1909,

making it a misdemeanor to trade animals afflicted with such a disease, but was a performance of the original agreement which was legal.

2. ————: As to What Contracts, was a Question for Jury. Whether an alleged contract was made and whether a subsequent transaction in settlement of an account was done pursuant to an alleged former contract, or was an exchange or trade of the account for the mules, are questions for the jury.

3. ————: Authority of Agent to Make: Evidence of. Where the evidence was that all the business was transacted with one V. as agent of plaintiff, that defendant had only one claim against the principal to adjust with reference to a balance on account owed by defendant, and that V. was authorized to adjust said claim, and said claim was based on the validity of a contract made with defendant by V. as agent for plaintiff, the authority to V. to adjust said claim was some evidence from which the jury could infer that V. had authority in the first place to make the contract alleged to have been made with defendant.

Appeal from Buchanan Circuit Court.—*Hon. Wm. D. Rusk*, Judge.

AFFIRMED.

*John E. Dolman* for appellant.

*Mytton & Parkinson* for respondent.

TRIMBLE, J.—Plaintiff, for some years prior to this suit, had been engaged in operating the mule barns belonging to the St. Joseph Stock Yards Company. About April or May, 1910, these barns became infected with glanders, a contagious and infectious disease in horses and mules which always results in a delayed though certain death. Defendant had worked as an employee of a customer of the said barns in the buying and selling of mules therein. His employer having failed, he determined to go into the business of buying and selling mules himself and was preparing to establish his business at the town of Hall's Sta-

tion, some distance south of St. Joseph. As an inducement to him not to go to Hall's Station but to transact his business through the barns operated by plaintiff, an arrangement between defendant and plaintiff was entered into through Mr. Vant, a director of plaintiff, that, if defendant would handle his mules through the plaintiff's barns, any loss sustained by reason of his mules becoming thereby infected with glanders would be made good to him. It is denied that any such agreement was made between Vant and defendant, but, as this question was submitted to the jury and found to have been made, and there was evidence to support the finding, we must accept such finding.

Thereupon, relying on said agreement, defendant handled his mules through said barns and transacted all his financial matters in relation to that business through, and on the books of, the plaintiff. About June, 1910, the defendant noticed that something was wrong with his mules, and, while he suspected glanders, he was not sure of it until some time later. Along in October, 1910, he ceased doing business through the plaintiff and at that time the account held by plaintiff against him amounted on the debit side to something over $10,000 with credits thereon sufficient to reduce the balance due on the account to $1756.13. All of defendant's transactions with plaintiff were had through Vant.

Some time in November or December, 1910, it became certain, through an investigation made by a veterinarian connected with the barns, that at least eight and possibly more of defendant's mules were infected with glanders. These eight had been handled by defendant through the plaintiff's barns. The next day after getting the veterinarian's report, defendant informed Vant of the disease in his mules. Thereupon, according to defendant's version, Vant and he afterwards reached an agreement whereby plaintiff took

the eight mules (for which defendant had paid $2180) in cancellation of the $1756.13, the balance due on the account, such agreement being made pursuant to the former agreement that for any loss sustained from glanders by reason of handling mules through said barns, defendant would be held harmless. Under the settlement, which defendant claims was made, the defendant's entire loss was covered by the cancellation of the balance due on the account. If he suffered the loss of other mules by glanders, he was to bear it himself. According to defendant's testimony the settlement made was that the account was square, and defendant agreed to go down in the country where the eight mules were and bring them, for plaintiff, up to plaintiff's barn the next morning. He accordingly went down that evening to the farm where they were kept, but Vant, after talking with other officials connected with the barns, telephoned defendant not to bring the mules there as it was wrong to do so. Consequently defendant did not bring them, and the next day the State Veterinary began the work of killing them as glandered animals.

A year or more thereafter this suit was brought to recover the balance due on the account. Defendant pleaded the contract and settlement made pursuant thereto hereinabove outlined. To this plaintiff filed a reply which was a general denial. The account being admitted, defendant was held to have the burden of proof and was required to offer testimony in support of his contention first. He did so, and at its conclusion plaintiff asked an instruction in the nature of a demurrer to defendant's evidence, directing the jury to find for plaintiff. This was refused. Whereupon plaintiff asked and received several instructions upon the issues presented by defendant's answer. The jury found for the defendant. Plaintiff appealed.

The first contention is that the settlement set up by defendant was void and unenforcible because it in-

volved a violation of section 4863, Revised Statutes 1909, which provides that, if any person shall suffer any horse, mule or ass, affected with glanders, to run at large, or shall use or tie the same off his own premises, or in any public place, or shall sell, trade, or offer for sale or trade, any such animal knowing the same to be diseased as aforesaid, shall be deemed guilty of a misdemeanor.

As we understand it, however, the settlement did not violate, nor did it involve the violation of, the statute in question. The cancellation of the debt evidenced by the balance due on the account was not a payment made for the mules pursuant to a contract of purchase and sale thereof. The cancellation was an act done in holding defendant harmless from loss sustained on account of glanders by reason of having transacted his mule buying through said barns. It was merely a compliance with that agreement and contract. The consideration moving plaintiff to settle the account was not the value of the mules. They were doomed and worthless. The consideration for settling the account moving the plaintiff was the release from liability for defendant's glander losses, which liability arose out of plaintiff's agreement to hold defendant harmless therefrom if he would transact his business through its barns. Both Vant and the defendant knew the mules were suffering with glanders. Both knew perfectly well that the purpose of the transaction was not to effect an exchange of the mules for the account or of the account for the mules, but it was to perform one of the terms of the original agreement entered into by which defendant agreed to buy and sell mules through said barns provided plaintiff would protect him from loss by glanders incurred thereby. It is true, on cross-examination, defendant, by assenting to questions framed for that purpose, was made to appear to say that he *traded* the glandered mules to plaintiff for the account and agreed

to deliver them at the stockyards the next day. But his testimony on direct examination showed what the agreement was, and the questions asked him on cross-examination, to which he assented, were in reality but legal conclusions as to what the settlement-agreement was. The question of whether this settlement-agreement was a fulfillment of the contract to hold defendant harmless, or was a contract whereby the mules were traded to plaintiff for the account, which would render necessary the delivery of the mules at the barn next day and without which the contract would not be complete, was submitted to the jury by instructions on both sides, and the jury found the settlement was as defendant contended it was. In addition to this, plaintiff's instruction in the nature of a demurrer to defendant's evidence was asked on the theory that the settlement agreement was an exchange of the account for the mules or was a purchase and sale thereof necessarily involving the violation of section 4863, and was therefore void. But, after this instruction was refused, plaintiff asked instructions on the issues of fact involved in defendant's theory of what the settlement was, which instructions were inconsistent with its previous demurrer. Even if the court erroneously refused plaintiff's peremptory instruction, did not plaintiff waive the error by asking instructions on the issues involved in defendant's theory and inconsistent with his refused instruction? It has been held by our Supreme Court that he did. [Everhart v. Bryson, 244 Mo. 507.] It is of no avail to say that, as defendant admitted the account and set up an extrinsic defense, the issues were changed and the battle ground shifted so that plaintiff was in reality *defending* against it, and should, therefore, have the same privilege that a *defendant* has to ask instructions inconsistent with a prior instruction demurring to the evidence. Because that was exactly the case in Bealey v. Blake's Admr., 70 Mo. App. 229, l. c. 237, where plaintiff's

cause of action was admitted and he was defending against a *counterclaim*. This court held that such a plaintiff, after receiving an erroneous adverse ruling upon its demurrer to the defendant's evidence, could ask instructions inconsistent with such demurrer without thereby waiving the error committed in the demurrer. But the Supreme Court in Everhart v. Bryson, supra, expressly disapproved this doctrine.

It is contended that Vant had no authority to agree with defendant that plaintiff would hold him harmless from loss by glanders if he transacted his business through its barns. But there is evidence to show that all the business defendant had with plaintiff was through Vant as the latter's agent. It also appears that all the business of plaintiff's board of directors was transacted informally. And that at a meeting of the directors Vant was authorized to see defendant and attend to the disposal, settlement or adjustment of the account between them. Authorizing Vant to see defendant and adjust or attend to the disposal of the account is an implied admission that defendant had some sort of a claim against the plaintiff, and, as there is no evidence of any other claim he had against it except the one growing out of the right to be held harmless from loss by glanders, this is sufficient to enable the jury to infer that this was the claim to be adjusted. If defendant had no such claim against plaintiff that was valid, why authorize an adjustment? We cannot say there was no evidence from which could be inferred Vant's authority to make the original agreement to hold defendant harmless.

Neither can it be said that, even if the error in refusing plaintiff's peremptory instruction has been waived by the asking of instructions inconsistent therewith, nevertheless it is the duty of the courts, on their own motion, to refuse to enforce an illegal contract whenever one appears, and, therefore, we should so act upon this one. This rule cannot be applied here

because, at most, it is a disputed question of fact whether the settlement was made with reference to an illegal contract. And this was submitted to the jury and by it the settlement was found to be made merely in performance and fulfillment of the legal agreement, and not a sale or trade of the mules.. Hence there is no alleged illegal contract in the case which we can refuse to enforce.

The judgment is affirmed.. All concur.