COMMERCE TRUST COMPANY, APPELLANT, v. McGIRK STATE BANK OF McGIRK ET AL., RESPONDENTS.*

Kansas City Court of Appeals. December 5, 1927.

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, section 2598, p. 694, n. 98; Bills and Notes, 8CJ, section 703, p. 490, n. 25; section 710, p. 501, n. 18; section 1295, p. 989, n. 2; section 1299, p. 995, n. 70; section 1376, p. 1061, n. 61.

*James E. Goodrich, H. G. Leedy* and *Milford W. Rider* for appellant.

*L. P. Embry* and *S. C. Gill* for respondents.

BLAND, J.—This is an action in two counts, each being upon a certificate of deposit issued in the name of the defendant, the McGirk State Bank, by C. F. Moore, cashier, in favor of one H. T. Severin. Both of the certificates were dated August 20, 1921, one is in the sum of $2000 and the other in the sum of $3000, and payable six months after date in current funds; they bore three per cent interest per annum from date but no interest after maturity. The certificates were endorsed and delivered by said Severin before maturity to plaintiff. At the close of plaintiff's testimony the court at the request of defendants instructed the jury to return a verdict in favor of defendants on both counts of the petition, resulting in a verdict and judgment in their favor, and plaintiff has appealed.

The testimony tends to show that the Motor and Finance Company, a corporation of Kansas City of which Severin was president, together wtih Severin individually, was indebted to plaintiff on August 27, 1921, upon several notes, one of the notes being in the sum of $20,000, dated August 1, 1921, and due upon demand. This note was secured by a chattel mortgage on certain motor cars in the corporation's place of business. On August 27, 1921, Severin brought to plaintiff the two certificates of deposit in question and offered them to it to take the place of certain motor cars covered by

plaintiff's chattel mortgage. Severin had sold these motor cars on an understanding that he was to pay over the sale price thereof to plaintiff on its debt but he reported on said date that he was unable to make this payment. Therefore, the certificates of deposit were to be taken as additional security because the chattel mortgage had been made of less value by reason of the sale of the motor cars. Severin delivered the certificates to plaintiff which agreed to accept them as security, in view of the fact that the cars had been sold, until the factory with which Severin was dealing, sent some new cars with shipper's order bill of lading with sight draft attached. These papers were to come through plaintiff bank and when they arrived the latter was to use the certificates of deposit to pay the draft, Severin stating that the factory had agreed to accept the certificates in payment of the cars, and plaintiff was to take the bill of lading covering these new cars as substituted collateral security for the $20,000 note. The certificates were never exchanged for the draft and bill of lading because the McGirk State Bank closed its doors before the arrival of the shipment of motor cars.

The debt, on account of which Severin delivered the unpaid certificates of deposit to plaintiff bank, remains unpaid in an amount greatly in excess of the certificates in question. The McGirk State Bank was taken in charge by the State Commissioner of Finance and was at the time of the trial in possession of the defendant A. B. Cole, Special Deputy Commissioner of Finance in charge of defendant bank.

The records of defendant bank show that the certificates of deposit sued on were duly recorded in the records of the bank kept for that purpose and that Moore who signed them as cashier was its cashier and a member of the board of directors, an executive officer and the manager of the bank, and that he received all of its deposits and had the custody of the bank's books.

The separate answers of defendants pleaded that the certificates of deposit were executed without consideration to the defendant bank and defendants sought to show at the trial that no money was "deposited with the McGirk State Bank for these certificates sued on in this case," but objection was sustained to the question.

It is insisted that the court properly sustained the demurrer to the evidence for the reason the certificates were delivered to plaintiff as collateral security for a pre-existing indebtedness to the bank and there was no other consideration shown for their delivery to it. In support of their contention that one who takes collateral security for a pre-existing debt is not a holder of the collateral in due course, defendants rely upon the case of Kincaid v. Estes, 262 S. W. 399, 403, decided by this court, and Wright v. Trust Co., 144 Mo. App. 640, decided by the Springfield Court of Appeals. The rule claimed by defendants was in force in this State prior to the enactment of the negotiable instruments act but that act changed

the rule. The existence of that act was overlooked in the Kincaid and Wright cases. However, what was said in the Kincaid case in reference to the matter was *obiter* and the Springfield Court of Appeals has later taken a different view of the matter than that announced in the Wright case. [See Aab v. French, 279 S. W. 435; Republic State Bank v. McDaniel, 290 S. W. 449.] Since the enactment of the Negotiable Instruments Law an existing antecedent debt affords sufficient consideration to make one a holder for value who accepts a negotiable instrument before maturity as collateral security for such pre-existing debt. [Aab v. French, supra; Republic State Bank v. McDaniel, supra; Bank v. Morris (St. L. Ct. of App.), 156 Mo. App. 43; State Bank of Freeport v. Road (St. L. Ct. of App.), 172 Mo. 662; Central Bank v. Lyda (K. C. Ct. of App.), 191 S. W. 245.]

Even had the certificates been executed without any consideration to the McGirk State Bank, defendants were not entitled to a verdict merely because plaintiff did not introduce evidence tending to show that it had no knowledge of such lack of consideration. Where the defense to an action on a note by the transferee before maturity for value is lack of consideration for its execution, defendant must show both the lack and plaintiff's knowledge thereof. [Kincaid v. Estes, supra; Pattonsburg Savings Bank v. Koch, 255 S. W. 580, 583; Bank of Polk v. Wood, 189 Mo. App. 62.] There was no evidence that plaintiff had knowledge of the lack of consideration, if any. However, defendants rely upon the following testimony as tending to show knowledge on the part of plaintiff of lack of consideration for the note; the fact that plaintiff knew that Severin, the payee in the certificate sued on, was heavily in debt and paying eight per cent interest on his indebtedness, and that the certificate sued on were bearing only three per cent interest; that when the officer of the bank who dealt with Severin was asked whether it was not unusual for Severin to have deposits under the circumstances in a small town bank, this officer answered—

"No, sir, not exactly unusual; it is evident that, ordinarily, that a business man in Kansas City would not be depositing actual money in a small town bank but those sort of things do not occur as items of consideration when we accept security from a customer in whom we have confidence."

Of course, these circumstances would not show knowledge on the part of the bank of lack of consideration, if any, as a matter of law, and we are in doubt whether they would afford even insufficient evidence of such knowledge to go to the jury. It will be borne in mind that although actual knowledge may be inferred from the facts and circumstances surrounding the acquisition of the certificates by plaintiff, such knowledge cannot be inferred from things that would merely put a prudent man on inquiry; nothing short

of actual knowledge or bad faith will defeat plaintiff's title. [Newton Co. Bank v. Cole, 282 S. W. 466, 467.] In the case last cited this court quoted approvingly the following from Depres, Bridges & Noel v. Galloway, 224 S. W. 998, 1000—

" 'When plaintiff's evidence discloses all the facts and shows all the elements constituting him a holder in due course, disclosing no damaging or impeaching facts, and is uncontradicted, then he is entitled to recover.' "

It would seem that the facts shown in the testimony relied upon by defendants might possibly put a prudent man on inquiry but it is not apparent that they, by themselves, are any evidence of actual knowledge or bad faith on the part of plaintiff in taking the certificates.

It appears that, originally, the records of the lower court showed that the motion herein in arrest of judgment was filed and overruled before the motion for a new trial was filed and because of this defendants insist that plaintiff waived its motion for a new trial. But we find that, upon the application of plaintiff, the court amended the record *nunc pro tunc* so as to show the filing of its motion for a new trial before the motion in arrest was filed, and that the court acted upon the motions in the order of their filing. Defendants do not complain of the action of the court in amending the record and, in fact, could not do so without themselves appealing. [Adamson v. Palmer, 293 S. W. 465.]

The judgment is reversed and the cause remanded. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.