· THE BUHLER MILL & ELEVATOR COMPANY, Appellant, v. J. G. JOLLY and WILLIAM JOLLY, doing Business under the Firm and Trade Name of THE SEDALIA TRADING COMPANY, Respondents.*

In the Kansas City Court of Appeals, May 5, 1924.

1. **SALES: Contracts: Breach: Right of Buyer to Rescind for Breach by Seller Held not Waived by Substitution of New Contract, Where Buyer Did not Have Knowledge of Breach of Former Contract.** Buyer's right to rescind contract for breach thereof by seller *held* not waived by substitution of new contract where buyer did not know at time of its execution that there had been a breach of the former contract.

2. ———: ———: Cancellation: Contracts Held Sufficiently Connected with Each Other as to Make Violation of First One Sufficient Ground for Cancellation of Third Contract. Where, after partial delivery of flour, two contracts for sale thereof were subsequently merged into third contract at average price of the two contracts, *held* that the contracts were sufficiently connected with each other as to make a violation of the first one a sufficient ground for cancellation of the third.

3. **EVIDENCE: Refusal to Admit Immaterial Evidence Held Not Error.** In an action for breach of contract for purchase of flour, refusal to admit mercantile report offered by seller, the same being hearsay and even if admissible to prove that buyer's father was a partner and therefore liable, *held* not error where father admitted he authorized his son to hold him out as a partner, but as jury found for defendants, it was immaterial whether father was a partner or not.

4. ———: **Even if There was Error as to Admission of Evidence Affecting Only Extent of Plaintiff's Damages, the Same was Harmless Since Jury Found Plaintiff was not Entitled to Any Damages.** Even if a market report, offered only as affecting extent of plaintiff's damages, was erroneously admitted, it would not constitute grounds for reversal, since the jury found that plaintiff was not entitled to any damages.

5. **APPEAL AND ERROR: On Appeal New Points Raised for First Time in Reply Brief Will not be Considered.** New points raised for first time in reply brief on appeal will not be considered.

6. **CONTRACTS: Construction: Contract Construed Most Strongly Against Party Preparing it.** Contract, if open to different constructions in regard to any feature thereof, should be construed most strongly against the party who furnishes or prepares it.

---

*Headnotes 1. Sales, 35 Cyc., p. 143 (Anno); 2. Sales, 35 Cyc., p. 118 (Anno); 3. Appeal and Error, 4 C. J., Sections 2992, 2996; Sales, 35 Cyc., p. 582; 4. Appeal and Error, 4 C. J., Section 2992; 5. Appeal and Error, 3 C. J., Section 1598; 6. Contracts, 13 C. J., Section 516.

Appeal from Circuit Court of Saline County.—*Hon. Robert M. Reynolds,* Judge.

AFFIRMED.

*Lamm, Bohling & Lamm, Harvey & Bellamy* and *Glen A. Wisdon* for appellant.

*Morrison, Nugent, Wylder & Berger* and *D. C. Johns* for respondents.

TRIMBLE, P. J.—Plaintiff is a corporation located at Buhler, Kansas, where it is engaged in the manufacture and sale of flour. Defendants, for the purposes of this case, are to be regarded as partners engaged in the flour and feed business at Sedalia, Missouri, under the name of The Sedalia Trading Company.

Plaintiff's suit is for breach of contract with reference to the purchase of flour. Three contracts were entered into, the first made on October 1, 1920, in which The Sedalia Trading Company agreed, in writing, to buy of

217 Mo. App.—16.

plaintiff 1000 barrels of "Uniform, Short Patent" flour at $12.30 per barrel, to be shipped within sixty days as ordered.   Under this contract, defendants, on October 18, 1920, ordered 250 barrels and they were shipped, arriving at Sedalia on November 5, 1920.   On this date the second contract was entered into in which defendants agreed to buy 750 barrels of the same grade and brand of flour at $10 per barrel, to be shipped within ninety days as ordered.   Four days later, to-wit, on November 9, 1920, defendants requested that the remaining 750 barrels of the first contract and the 750 barrels called for in the second contract be merged, and the two contracts consolidated and rewritten, into a third contract.

Plaintiff acceded to this, and on November 12, 1920, a third contract was entered into for 1500 barrels of "Uniform, Short Patent" flour at $11.15 per barrel (which was the average of the prices in the other two contracts), to be shipped within sixty days as ordered.   Said third contract contained the following clause:   "This is in lieu of contract of October 1, 750 bbl. @ $12.30 and 750 bbl. of November 5th @ $10.00."   In all respects, other than those above mentioned, the terms of this third contract were the same as the other two, and all three of them were prepared by plaintiff on forms or blanks furnished by it.   Plaintiff's suit is on the third contract.

The answer set up the execution of the other two contracts, and alleged the above-mentioned merger and consolidation thereof into the third contract and charged that the term "Short Patent" was a trade name used to designate a certain quality, grade or standard of flour. The answer further alleged that the 250 barrels shipped to defendants were not "short patent" but were of an inferior grade known as "long patent" flour, unsatisfactory to flour users; that when customers discovered the quality of the flour, they invariably sent it back and refused to accept or pay for it and thereby defendants' flour market was greatly injured and they were unable to sell said flour to the trade they had; that the fact that

said 250 barrels were of an inferior grade was not discovered until after the two contracts had been merged into the third or consolidated contract, and immediately upon learning this fact, defendants cancelled the contract and refused to take the rest of the flour called for in the contract sued on.

It was further set up that the "long patent" flour was worth much less in the market than the flour contracted to be sold, and a counterclaim was interposed for the loss sustained on the 250 barrels by reason of this difference in the market price of the two flours.

The evidence is that after the execution of the third contract, defendants learned from retail reports and by investigation and chemical analysis that the 250 barrels of flour were not of the required grade and standard; and thereupon plaintiff was notified the flour was unsatisfactory and that therefore the defendants cancelled the contract of November 12, 1920, and directed plaintiff not to ship any more. To this plaintiff replied that the contract would be terminated on the basis of the market difference in price, and later notified defendants that the 1500 barrels had been sold at the then market price, which involved a loss of the difference between the contract and the market price.

There would seem to be no question but that the floor that was shipped was not up to contract grade or standard, for in a letter dated January 3, 1921, written by plaintiff to defendants, the former, in referring to the flour, stated: "We concede that it is not exactly up to the standard."

The instructions submitting the defense to the jury conditioned the defendants' right to a verdict in their favor under the petition on the jury first finding that the flour delivered was of an inferior grade, and that this was not known to defendants until after the execution of the third contract.

Upon the issues under the petition, the jury found for defendants; and they also found for defendants and

against plaintiff in the sum of $146 on the counter-claim, but a remittitur afterwards reduced the judgment thereon to $125. Plaintiff appealed.

Appellant's brief in one place apparently concedes that what the parties did was to consolidate and merge the two contracts into a third of date November 12, 1920. And yet it is urged that the third contract was merely the substitution of one independent contract for two other separate and independent contracts, and therefore no defense to the third can be based upon a violation of the first contract. It is no doubt true that, generally speaking, the substitution of a new contract for an old one is a sufficient consideration for the new; and doubtless one independent contract cannot be rescinded for the breach of another independent contract.

But, suppose the two contracts had remained as they were drawn. Defendants agreed in the first to pay $12.30 per barrel and in the second to pay $10 per barrel. When the violation of the first, on account of the inferior quality of the 250 barrels, was discovered, defendants would have had the right to rescind that contract and escape the payment of $12.30 for each of the 750 barrels remaining thereunder, but would still be required to pay only $10 per barrel for the 750 barrels due under the second contract provided it was not violated. But before any violation of the first contract was known, defendants entered into the third contract for the remaining flour called for in the first and all of the flour called for in the second, at the average price of the two contracts, which obligated them to pay $1.15 *more* per barrel for 750 barrels than they would have had to pay under the second contract. Consequently, this additional price on the 750 barrels above the contract price of the second contract has no other consideration except that growing out of the price in the first contract; and therefore, how can these contracts be treated as wholly separate and independent when the consideration involved in one, the first, enters into and inextricably forms a part of the con-

sideration of the other, the third? While the substitution of a new for an old contract may be a sufficient consideration for the former so as to prevent it from being wholly without consideration, yet the price called for in the first contract is the only consideration for the *increase* in price in the third contract over the price in the second. Now, the right to rescind and decline to take the remaining 750 barrels of the first contract, because of its violation, was clearly a valuable right; and that right was not waived by the execution of the third contract, because defendants did not know at that time of the violation. Defendants cannot be said to have waived when they did not know that fact. [Windle v. Citizens National Bank, 204 Mo. App. 606; Pence v. Langdon, 99 U. S. 578; Bishop on Contracts, sec. 292; Revere, etc., Refinery v. Stone, etc., Co., 285 Fed. 167, 172; Smith v. Minneapolis Threshing Machine Co., 89 Ok. 156.]

It would seem, therefore, that it cannot be successfully maintained that the third contract is wholly separate from and independent of the other two, for, as indicated above, the validity of the third involves or presupposes the validity of the other two, and in its origin it was inseparably connected with the other two. In the situation here shown, the right of defendants to defend against the third contract on the ground stated would seem to be analogous to those where contracts have been entered into by mistake. It is well settled that such contracts can be defended against. [Iowa Loan and Trust Co. v. Schnose, 19 S. Dak. 248, 255; Bedell v. Wilder, 65 Vt. 406, 410; Nordyke, etc., Co. v. Kehlor, 155 Mo. 643, 654; Goodin Mercantile Co. v. Organ, 186 S. W. 589, 590.] And in such cases it is not necessary to ask for cancellation where the matter raised is defensive merely and nothing calls for the placing of the other party *in statu quo*. [Short v. Thomas, 178 Mo. App. 400, 416.] Of course, the cases cited are those of mutual mistake, and in the case at bar there was no *mutual* mistake, but the situation and principle would be the same where, as

here, the other party instead of making a mistake had secretly violated the contract out of which grew the one sued on. The contracts were sufficiently connected with each other as to make a violation of the first one a sufficient ground for the cancellation of the third. [Brunswig v. Farmers, etc., Stock Co., 100 Kan. 261, 265.]

We need not go into the question of whether, upon the defendants' cancellation of the third contract on the ground stated, plaintiff could have insisted upon the reinstatement of the second contract, because nothing of that kind was done. The plaintiff saw fit to stand upon the third contract and sue upon and attempt to enforce it for the flour covered by it which included the flour in both of the other contracts.

An assignment of error, not stressed however, complains of the refusal to admit a certain mercantile report offered in evidence by plaintiff. There is nothing to show that plaintiff saw it or that defendants were bound by it. The same was hearsay at best; but even had it been admissible the only purpose of introducing it was to show that William Jolly was a partner of his son, J. G. Jolly and therefore liable with him; but William Jolly admitted he authorized his son to hold him out as a partner in order to strengthen his credit, and as the jury found for defendants, it was immaterial whether William Jolly was a partner or not, since no right of action could possibly exist against William Jolly unless J. G. Jolly was himself liable.

Another market report claimed to have been erroneously admitted was offered only as affecting the *extent* of plaintiff's damages. But, even if there were error in that regard, since the jury found that plaintiff was not entitled to any damages, it is not seen how such error, if any, could constitute grounds for reversal. [Stark v. Knopp Publishing Co., 160 Mo. 529, 550; Gricus v. United Rys. Co., 291 Mo. 582, 589.]

Certain new points are raised by appellant for the *first* time in a reply brief. But it is well settled that

such will not be considered. [Orchard v. Missouri, etc., Lumber Co., 184 S. W. 1138; Simmons v. Affalter, 254 Mo. 163, 174.] However, lest it may be claimed that some of these points were called out by the position taken by defendants in their presentation of the case, we may say the clause in the contract relied upon by plaintiff to defeat the defendants' right to cancel even the first contract for breach as to quality of the first shipment, has no reference to the quality of the goods, but merely to the failure to *ship,* or to ship in time. This is shown not only by the language of the clause itself but also appears from the heading under which it is placed and the context in which it occurs. Moreover, the contract was one furnished by plaintiff and in such situation, if it is at all open to different constructions in regard to any feature thereof, it should be construed most strongly against the party who furnishes or prepares it. [Belch v. Schott, 171 Mo. App. 357, 361.] The breach as to quality in the first shipment would clearly have given the defendants the right to cancel the rest of the first contract had it been then in force. [Lyons Milling Co. v. Farmer's Supply Co., 212 Mo. App. 390; Unguer & Co. v. Louis Maull, etc., Co., 155 Mo. App. 95, 106; Lindsborg, etc., Elevator Co. v. Danzero, 193 S. W. 606.]

The judgment is affirmed. All concur.