JOHN DEERE PLOW CO., A CORP., APPELLANT, v. H. T. COOPER, J. C. COOPER AND M. H. COOPER, CO-PARTNERS DOING BUSINESS AS COOPER BROTHERS & SON, RESPONDENTS.—91 S. W. (2d) 145.

St. Louis Court of Appeals.   Opinion filed March 3, 1936.

*Paul L. Hale* for appellant (plaintiff).

168

*Davis & Damron* for respondents.

HOSTETTER, P. J.—This suit was instituted in the Circuit Court of Madison County on February 25, 1933, and is an action to recover the sum of $423.90, for the full value of certain farm machinery and implements furnished to defendants under a written contract between plaintiff and defendants.

The contract is one furnished by the plaintiff and is very voluminous, consisting of sixty-eight paragraphs in very fine print and under sub-heads of Notices (of which there are five paragraphs) Freight Notices (of which there are two paragraphs) Conditions of Sale (of which there are forty-seven paragraphs) Warranties (of which there are six paragraphs) ond Exceptions to Warranties (of which there are eight paragraphs).

The petition alleges that plaintiff was duly incorporated under the laws of Missouri and that defendants were co-partners doing business under the name and style of Cooper Brothers and Son; that on February 16, 1932, plaintiff entered into a written contract with defendants wherein the latter agreed to handle and promote the sale of goods, wares and merchandise furnished by plaintiff; that on February 18, 1932, defendants requested plaintiff to cancel the written contract, which plaintiff then and there did; that thereafter on March 7, 1932, defendants requested plaintiff to reinstate said contract, advising that they were ready and willing to proceed to perform their part of same; that in accord with such request plaintiff at once reinstated said contract with defendants, and that, in accord with the terms of said contract plaintiff furnished defendants with merchandise, a detailed itemized account of which is set out in the petition, aggregating, as the contract price, $423.90, which is alleged to be due and owing to plaintiff from defendants together with interest, for which amount plaintiff prays judgment.

Defendants' answer contained an admission that they entered into the contract referred to in the petition and that they received the property mentioned therein, followed by a general denial of the other allegations in the petition.

It is further averred in the answer that under the terms of said contract they were given exclusive agency to sell plaintiff's farm equipment in the city of Fredericktown and vicinity as agents for plaintiff and that plaintiff was not to receive pay for said property until it should be sold; that the title to all of such property ever remained in plaintiff and at no time did defendants acquire title thereto; that some time after the execution of said contract and after the reception of the property and prior to July 27, 1932, the plaintiff breached said contract by consigning and delivering to one E. H.

Kuhlman of Fredericktown, Missouri, for sale, property and farm implements of like kind and character delivered to defendants, notwithstanding the exclusive right and privilege of defendants of selling said property and equipment in said city and vicinity, and plaintiff permitted said Kuhlman to sell said property and farm implements at a less price than by the terms of the contract with defendants the latter were permitted to sell, so that defendants were unable to compete with said Kuhlman and to make sale of said property at the prices fixed by plaintiff under said contract; that when defendants learned of plaintiff's breach of said contract they tendered to plaintiff on or about July 27, 1932, all of said property then unsold by them and tendered plaintiff $69.02 in payment of all of said property sold by them, that being the full amount due plaintiff at that time for all property so sold theretofore by defendants, which property and money plaintiff refused to receive; that defendants since making said tender of money and property have ever held the same subject to the order of plaintiff, who may receive it whenever it elects so to do, and tenders the same into court for plaintiff's use.

Then defendants' counterclaim is set up in the answer, wherein, in substance, defendants claim damages in the sum of $500 by reason of their alleged loss on account of plaintiff breaching its contract by constituting Kuhlman as agent to sell in Fredericktown and vicinity tools and farm implements of like kind and character as those defendants were handling; because of the loss of profits sustained by defendants thereby.

The reply was a general denial of all the allegations contained in the answer and counterclaim.

It was admitted by the three defendants that they were partners and that they signed the printed contract. It was shown by testimony offered by plaintiff that the defendants requested the cancellation of the contract and that plaintiff complied therewith and later, that the contract was reinstated and the merchandise shipped and it was further stipulated by the respective counsel that the amount of money involved in the suit was $423.90.

John Cooper, one of the defendants, testified that in discussing the contract with Mr. Heddin, an agent of plaintiff, he (witness) said that they (meaning defendants) were to have the exclusive agency in Fredericktown and vicinity for the sale of the machinery. This testimony was stricken out upon request of plaintiff's counsel.

Witness John Cooper continued as follows:

That they (defendants) tried to sell the goods according to the contract and upon investigation found that Mr. Kuhlman, another dealer in Fredericktown, was handling some of the same kind of machinery, shipped him by plaintiff; and that he then marked prices on plows the same as Kuhlman's prices and that Mr. Heddin said to

him, "You fellows can't do that;" and denied that plaintiff was shipping to Kuhlman and he (witness) said he knew better because he had been to Kuhlman's place and had seen the invoices; that they (defendants) were unable to sell plaintiff's products because of the competitive selling by Kuhlman.

Thereupon, the witness was stopped and the jury was excused and after a colloquy between court and counsel, the court made its ruling as follows:

"THE COURT: All right, gentlemen. As the court sees it, there is nothing in this contract that can be held to give to these defendants an exclusive right to sell plaintiff company's products in this territory, or to prevent this company appointing as many agents in this territory as it desired."

Defendants then made proof of their sales, which amounted to $69.02 and of their tender to plaintiff of said amount of money together with the equipment not sold by them and of plaintiff's refusal to accept the $69.02 and also the remaining equipment left unsold, which was shown to have been stored by defendants for the use of plaintiff, and that they were able, ready and willing to pay the plaintiff the amount of $69.02 and turn over the remainder of plaintiff's products in as good condition as when received by them.

At the close of all the testimony the plaintiff requested the court to give to the jury a peremptory instruction that under the law and evidence its verdict should be in favor of the plaintiff and against defendant for the sum of $423.90. This peremptory instruction the court refused to give, but, at plaintiff's request, instructed the jury that it should find against defendants on their counterclaim and also at the request of plaintiff gave instruction number two, reading as follows:

"The court instructs the jury that if you find and believe from the evidence that the plaintiff sold and delivered to defendants the merchandise mentioned in the evidence as having been delivered by plaintiff to defendants, under the contract mentioned in the evidence, dated February 1, 1932, and that defendants have failed and refused to pay plaintiff therefor, then and in that event your verdict should be in favor of plaintiff and against defendants for the sum of $423.90."

The jury returned a verdict in favor of the plaintiff assessing its damages at the sum of $69.02 with the return of the unsold merchandise.

Plaintiff in due time filed its motion for a new trial which was overruled by the court and thereupon plaintiff brings the cause to this court by appeal for review.

Plaintiff's assignment of error in this court is that the court erred in not giving its peremptory instruction to the effect that plaintiff

under the law and evidence was entitled to a verdict and judgment for $423.90.

A radical disagreement exists between counsel for respective parties as to the construction of the contract under which plaintiff furnished the merchandise in controversy, the plaintiff contending that the contract is a conditional sales contract, whereas, the defendants aver that it is a contract of agency or bailment for sale. The contract has some of the elements of each.

The defendants' counsel catalogue the following features of the contract in support of their contention that it is not a conditional sales contract, but is a contract of agency, or bailment for sale, viz.:

That defendants are designated in the contract as dealer and not as purchaser, or vendee, or by any similar term implying a sale to them; that the dealer is to "actively promote sale of the goods ordered;" that title and ownership of the goods delivered to dealer is to remain in plaintiff unless surrendered in writing and paid for in cash and that no sale of such goods by the dealer to the customer waives or destroys the reserved title in plaintiff; that settlement for goods delivered to dealer is to be made as and when cash proceeds of sales made by dealer are collected and such proceeds although not paid over by dealer to plaintiff to become the property of plaintiff; that dealer is to store all implements and goods to protect them from damage from the elements; that dealer at time of sale to customer is to get signed order from the customer and when requested, to deliver copies of orders to plaintiff and use plaintiff's blank orders when furnished for that purpose; that the contract implies that the dealer could return the goods to plaintiff with its written consent; that upon rescission of contract by plaintiff it could immediately take possession of all the remainder of the merchandise in the possession of the dealer and retain or sell them and credit dealer with value thereof, or, if sold, with the proceeds thereof; that in case plaintiff retained any goods under the contract the dealer was to pay the value of the depreciation thereof on account of exposure to the elements or other causes; that the warranties therein are in favor of the dealer's customer and plaintiff is to deal directly with the customer with respect to carrying out the warranties; the absence of words in the contract purporting to constitute an agreement on the part of plaintiff to sell the goods to the dealer and none binding or purporting to bind the dealer to buy; that upon the face of the contract there appeared nothing more nor less than an agreement by which the plaintiff was to furnish the dealer the goods and implements to be sold by the dealer in the designated trade territory and to account for the proceeds when collected; that, as further bearing upon the nature of the contract, as tending to show that it was one of agency and not one of sale, the construction placed upon it by the parties interested shows that plain-

tiff accepted cancellation of a similar contract made with the dealer at about the same time the contract in suit was made, and made no effort to hold the dealer liable as a purchaser; that defendants regarded their status as agents of plaintiff as shown by their letter, speaking of themselves as agents; that defendants were to sell the goods and implements at prices fixed by plaintiff and the latter refused to allow them to deviate from said prices; that the colloquy between court and counsel indicated that the parties at that particular stage of the trial regarded the contract as an agency contract when discussing the question as to whether defendants had the exclusive rights to sell in Fredericktown and vicinity; that it is of great significance that in plaintiff's petition it is no where alleged that it *sold* its goods to defendants, but did allege that it made the contract with defendants "wherein defendants agree to handle and promote the sale of goods, wares and merchandise furnished by plaintiff . . . . . that in accordance with the terms of said contract plaintiff furnished defendants with merchandise."

Plaintiff's counsel contends that most of the earmarks catalogued by defendants' counsel as indicating that the written contract sued on is an agency contract and not a contract of sale of the products by plaintiff to defendants are placed in the writing to further protect the plaintiff and relies principally on a clause found under the head of "Notices," which reads as follows: "Goods returned without written authority will not be accepted by the Plow Company." Other provisions are recited which are claimed to stamp the writing, taken as a whole, as a conditional sales contract.

The construction which parties themselves place upon an existing contract is entitled to great weight in arriving at the proper interpretation of the same. In Southern Surety Co. v. Goltra (Mo. App.), 9 S. W. (2d) 661, l. c. 663, the court says: "There is no doubt that the interpretation placed upon an agreement by the parties to it is strong evidence of what they both intended it to mean, and, while not conclusive, is of vital significance and entitled to great weight, if the terms, reasonably construed, are in harmony therewith." [See also, Meissner v. Standard Ry. Equipment Co., 211 Mo. 112, 109 S. W. 730; Wetmore v. Crouch, 150 Mo. 671, 51 S. W. 738; Laughlin v. City of Joplin, 161 Mo. App. 161, 142 S. W. 786; C. D. Smith Drug Co. v. Saunders, 70 Mo. App. 221; Hannan, Hickey Bros. Const. Co. v. Chicago, B. & Q. R. Co. (Mo. App.), 247 S. W. 436.] In Thomas v. Utilities Bldg. Corporation (Mo. Sup.), 74 S. W. (2d) 578, l. c. 582, the court says: "The interpretation put upon a contract by the parties themselves, as shown by their conduct in regard to it, is always persuasive in determining its true meaning. [State ex rel. Union Indemnity Co. v. Shain (Mo. Sup.), 66 S. W. (2d) 102, and cases cited.]"

Another rule of general acceptance is, that if a written contract is ambiguous, or open to different constructions, as the contract in the instant case unquestionably is, then it must be construed most strongly against the party who prepared it (in this instance the plaintiff) and handed it out to the other party (in this instance the defendant partnership) to sign. [Wells v. Thomas W. Garland, Inc. (Mo. App.), 39 S. W. (2d) 409; Belch v. Schott, 171 Mo. App. 357, 157 S. W. 658; Southern Ry. Co. v. Berthold & Jennings Lumber Co. (Mo. App.), 247 S. W. 219; Buhler Mill & Elevator Co. v. Jolly, 217 Mo. App. 240, 261 S. W. 353; Sanders v. Sheets (Mo. App.), 287 S. W. 1069.]

We refrain from ruling on the question as to whether the trial court was correct in ruling the defendants' counterclaim out on the ground that there was nothing in the contract to give defendants the exclusive right to sell plaintiff's products in "Fredericktown and vicinity" as defendants did not appeal from this adverse ruling. But, we are frank to say, that, if the question were properly before us for determination, we would, doubtless, find much, in analyzing the spirit as well as the letter of the contract, to support a conclusion opposite to that reached by the learned trial judge. But, it is unnecessary for us to pursue this subject further, or to rule on the meaning of the written contract, as the plaintiff, after the court refused its peremptory instruction, asked, and the court gave, its instruction number two (hereinbefore set out) wherein the question was submitted to the jury for its decision as to whether plaintiff *sold* the merchandise in controversy to defendants under the contract, thus in effect asking the jury to construe the contract to that extent.

The jury, by its verdict, found that there had been no *sale* of the merchandise in controversy to the defendants by the plaintiff. In this situation plaintiff is now estopped to allege error in the refusal of the trial court to give its requested peremptory instruction, reading as follows:

"The court instructs the jury that under the law and the evidence in this case, your verdict must be in favor of plaintiff and against defendants on plaintiff's petition, for the sum of $423.90."

By requesting an instruction on the merits, a plaintiff waives its peremptory instruction. [Everhart v. Bryson, 244 Mo. 507, 149 S. W. 307; La Monte Bank v. Crawford (Mo. App.), 27 S. W. (2d) 762; Thomas v. Boatright (Mo. App.), 245 S. W. 211; Kincaid v. Estes, 218 Mo. App. 109, 262 S. W. 399; International Harvester Co. v. McLaughlin, 227 Mo. App. 221, l. c. 224, 52 S. W. (2d) 227.]

This ruling does not apply to a defendant, because there is a radical difference between the situation of a plaintiff and a defendant. The plaintiff brings the action. If the ruling is adverse to him he may take a nonsuit. A defendant is in court without his consent.

The court may make many rulings that a defendant may deem erroneous, but he cannot abandon the case. If in court he must remain until the cause is finished. He has a right to tender as many defenses as he has. If the court erroneously deny him one, he may avail himself as best he can of the remaining defenses. As stated by Judge LAMM in Kenefick-Hammond Co. v. Fire Insurance Society, 205 Mo., l. c. 307, ''The plaintiff goes into court voluntarily; the defendant is 'lugged' in, that is, pulled in by the *lugs, will ye, nill ye.* The plaintiff goes up to battle on his own ground—he pitches the field.'' It follows, therefore, that a defendant may, if he chooses, urge as many defenses as he thinks he has. He may, if he pleases, figuratively, unfurl and fight under the black flag. He cannot be estopped from complaining of the action of the trial court and his adversaries in forcing him to fight the battle upon grounds selected by them and at a great disadvantage to him.

The Everhart case, supra, promulgated in 1912, was before the Supreme Court en banc and was a five to two decision and in the majority opinion, written by Judge FERRISS, it was conceded that the particular point involved was before the court for the first time, and, in making its ruling, the court disapproved of two cases in the Kansas City Court of Appeals, viz.: Bealey v. Blake's, Admr., 70 Mo. App. 220, and Eagan v. Martin, 81 Mo. App. 676, which appeared to hold contrary views. Plaintiff's counsel, in its brief, stresses the dissenting opinion of Judge KENNISH, in which Judge WOODSON alone concurred, criticising the majority opinion as creating an unfair rule of procedure against a plaintiff, but, so far as we have been able to discern from our investigation, the majority opinion has been adhered to and followed down to date.

It follows, therefore, that the judgment of the trial court should be affirmed, and, it is so ordered. *Becker* and *McCullen, JJ.*, concur.